### McWhorter *vs.* Agnew.

Where by a deed of settlement, in anticipation of marriage, the property of the wife was conveyed to a trustee, in trust for her use until the marriage, and after the marriage for her separate use notwithstanding such coverture, and after her death for the use of such person or persons as she should by will and notwithstanding such coverture appoint, and in default of such appointment to the use of her heirs, and to the exclusion of the intended husband either as tenant by the curtesy or otherwise ; so that the wife should not at any time thereafter, either by herself or in conjunction with others, have the power of exonerating, releasing or discharging the property from the operation of her settlement, or of receiving any portion thereof except the annual income thereof ; *Held,* that by the operation of the rule in Shelly's case, the husband having died before the wife, the limitation of the equitable estate to the wife for life, with an unlimited power of appointing the inheritance by will, united itself with the equitable estate in remainder to her heirs generally, so as to create an equitable estate in fee in the whole property in the event that had happened. And that having united this equitable fee with the legal estate, by a conveyance from the trustee, she was able to give a perfect title to the property to a subsequent purchaser thereof.

Where the whole equitable interest in real property is in a feme covert, with a general power of appointment by will, such power of appointment is appendant or appurtenant to her equitable estate ; and upon the death of her husband and a conveyance of the legal estate to her by the trustee, such power is merged or extinguished, in equity as well as at law. *Aliter* where the power of appointment is a mere power in trust, for the benefit of others who have an interest in the execution of the power.

THE object of the complainant's bill in this cause was to compel the specific performance of a contract, by the defendant, for the purchase of two lots of land in the city of New-York. The cause was heard on bill and answer ; the facts on which the rights of the parties depended not being disputed, and the only question being whether the complainant was able to convey a perfect title to the premises in question. The complainant, Frances Caroline Greenleafe Lawrence, before her marriage with Alexander C. Mc-Whorter, in 1818, was seized in fee of certain real estate in New-York, including the two lots in question ; and the objections to the title arose out of a deed of settlement, executed in November, 1818, a short time previous to and in

July 19.

1836.

McWhorter
v.
Agnew.

contemplation of the intended marriage. By this deed of settlement between the complainant of the first part, W. S. Pennington and H. Howland, as her trustees, of the second part, and A. C. McWhorter, her intended husband, of the third part, she conveyed the premises in question, together with her other real estate and certain personal property, to the parties of the second part and the survivor of them in fee, in trust for her own use until the intended marriage, and after the marriage in trust for her separate use and benefit, notwithstanding her coverture, free and clear and discharged of and from all and any management, control, or power, or present or future debts or responsibilities of her intended husband; and also at any time thereafter to sell, lease and convey the real estate or any part thereof unto any persons whomsoever, and for such prices or for such estates either in fee simple, for terms of years, or otherwise, as the complainant should in writing, under her hand, and notwithstanding her coverture, direct or designate, and to unite with her in any deeds, leases, conveyances or other instruments in writing, which counsel should deem suitable and requisite or proper therefor; and to collect, receive and discharge the consideration monies and rents, in the names of the trustees, but for her use and benefit under such marriage settlement, in such manner as she should, notwithstanding her coverture, direct; and upon which sales the purchasers were not to be held accountable for the due application of the purchase money. And upon the further trust to hold the property for the use of such persons and for such shares, portions or estates therein as the complainant should by her will, or other instrument in the nature of a will, designate or appoint, notwithstanding her coverture; and in default of such appointment for the use of her heirs, to the exclusion of her said intended husband either as tenant by the curtesy or otherwise. It was further declared by the deed of settlement to be the true intent and meaning thereof, that the property or estate thereby conveyed in trust should be so conveyed, restricted and held, that at no time thereafter, under any pretence whatever, nor by any device, should the complainant, either by herself or in con-

1836.

McWhorter
v.
Agnew.

junction with others, have the power or authority of exon-erating, releasing, or discharging the property from the operation of the deed of settlement, or of receiving or enjoying any part or portion thereof, except the annual or other interest or income thereof; and that any other property or estate which the complainant might thereafter acquire or become entitled to in her own right, either by gift, devise, bequest, descent or otherwise, should be conveyed and vested in the trustees upon the like trusts. A further provision was made in the trust deed, for the appointment of a new trustee, in the place of one who should die be removed or become unable to act, by the remaining trustee and the complainant jointly, notwithstanding the coverture, and to convey to and invest him with the trust property, in the place of the one so dying, being removed or becoming unable to act. Subsequent to the marriage, H. Howland, one of the trustees, was discharged from his trust by an order of the court of chancery, and G. H. McWhorter was duly appointed in his place, in the manner specified in the deed of settlement. The husband and the other trustee died, leaving the complainant and the new trustee surviving; who, in 1827, united in a petition to the chancellor for leave to the surviving trustee to account with the complainant in regard to the trust, and for permission to convey to her the trust property, and that he might thereupon be discharged from the trust. An order to that effect was entered accordingly, and G. H. McWhorter, the surviving trustee, in pursuance thereof, conveyed the trust property to the complainant; who subsequently contracted with the defendant for the sale of the two lots in controversy in this suit. The defendant was advised by his counsel, and by his answer insisted that it was the object of the marriage settlement to render the real estate embraced therein inalienable during the life of the complainant, and only alienable at her death, by will; and that she could not, therefore, convey to him a clear and perfect title to the premises. But he submitted to perform his contract of purchase if the court should be of opinion that the complainant had a good and valid title

1836.

McWhorter
v.
Agnew.

to the lots in question, and could legally convey the same to him.

*S. A. Foot*, for the complainant. The property is either subject to the trusts contained in the deed of marriage settlement, or is not; and in either case Mrs. McWhorter has a full right to sell and convey it. If the property is subject to the trusts, she is the sole trustee, and has authority as such to sell and convey. If the property is discharged of the trust, then she is the absolute owner, and can sell and convey it in that capacity. The equitable estate was always in her after the execution of the deed of settlement. And on the principle established in *Shelly's case*, having now the legal estate, she is the absolute owner of the property. 4 *Kent's Com.* 214 *to* 222, 2*d ed.* 1 *Bridg. Dig.* 643.

*D. Lord, jr.*, for the defendant. The deed between Mrs. McWhorter and the trustee of September, 1827, and the petition and order in chancery recited therein, being voluntary acts, and not adversary proceedings, do not extinguish the trusts as to the estate. The title is bad during her life, or for any shorter term, and it cannot be forced on a purchaser. By the marriage settlement of November, 1818, the estate is conveyed to trustees, so as to secure the actual use to the wife for her life; giving her a power of appointment by will, with a remainder to her heirs, in default of such appointment. She has also the power of changing the specific property by sale and re-investment, but under a restriction against her extinguishing the trusts or touching any thing but the annual income by her acts *inter vivos*. Such restriction is valid, because, 1. It does not render the land inalienable; and 2. It is not contrary to the policy of the law to restrain alienation during one life; 3. It is not repugnant to the estate; 4. It does not prevent the alienation of the remainder, if a vested remainder, in her; 5. It is not a question here between creditors and a grantor to her own use; 6. A feme covert, treated in equity as a feme sole and owner of the estate, may be restrained from alienation

1836.

McWhorter
v.
Agnew.

by words of express restriction. (*Jaques* v. *Methodist E. C.* 17 *Johns. R.* 548.)

The conveyance of September, 1827, was a direct violation of the expressed intention of the settlement. It was an attempt to extinguish the trust by uniting the legal estate with the interest of the cestui que trust. The wife did thereby assume, in conjunction with the trustee, to exonerate the property from the operation of the trusts, and to receive a part of the trust fund beyond the annual income.

The trusts do not necessarily cease with the coverture. The body of the deed contains no limitation to this period. And as the tenor of the deed went to secure the annual income for her life, with no power to sell her own interest, it may be taken as a motive of the marriage, that such a provision was secured to the wife for the benefit of the children.

THE CHANCELLOR. As this was an executed and not a mere executory trust, and as the limitations were both limitations of equitable estates or interests of the same nature, the rule in *Shelly's case* applied to the equitable estate conveyed by this deed of settlement; for equity follows the law in such a case. The limitation of the equitable use to the complainant for life, with a general power of appointment of the inheritance by will, notwithstanding her coverture, united itself with the equitable use in the remainder to her heirs in default of such appointment; so as to vest the whole beneficial interest in the inheritance, as well as in the life estate in the complainant, as her separate estate, in fee simple, free from the control of her husband, and divested of any equitable claim on his part to an estate by the curtesy therein. (*See Jickling's Leg. and Eq. Estates*, 286.) Upon the death of her husband, therefore, the whole beneficial interest in the trust estate was in her, and subject to her absolute control and disposition, with the assent of the trustee who held the legal estate for her sole use and benefit. The subsequent conveyance to her by the surviving trustee again united the legal and equitable estates which had been separated by the deed of settlement. This, therefore, enables

her to give a clear and perfect title in fee to purchasers of the estate, unless the power to appoint the inheritance, which was reserved to her in the original deed of settlement, is one which cannot be released or extinguished in equity, although it is merged at law.

This power to appoint the inheritance by will notwithstanding the coverture of the complainant, was clearly a power appendant or appurtenant to her equitable interest in the trust property. And as the power of appointment was general, so that no other person or class of persons could have any beneficial interest in the execution of the power, there was no good reason why the complainant, after the death of her husband, should not be permitted to extinguish the power, and to reinvest herself with the legal title and the absolute control of the property, as she held the same previous to the deed of settlement. And if the power is gone at law, equity will not revive it, or again separate it from the legal estate so as to defeat the title of her grantees. During the existence of her coverture there might be good reasons for endeavoring, if possible, to place the inheritance as well as the life estate beyond her control, unless with the consent of her trustees, except by means of a will which might be revoked by her at any time during her life. And without such a provision as is contained in the deed of trust, depriving her of the power of defeating the settlement which had been made for her sole benefit, the influence of the husband over his wife might have been such as to have induced her to unite with him in an application to this court to change the nature of the trust, or to have a reconveyance of the legal estate to her, so as to put it within the control of her husband without the assent of the trustees. During the coverture of the wife and while the legal estate remained in the trustees, the only way in which the property could have been conveyed, so as to extinguish the power and give a good title to the purchaser, was by a conveyance in which the trustees should join with the husband and wife; as she could not otherwise dispose of the inheritance independently of the power, which power could only be executed by a revocable will. But upon the death

of her husband and the reconveyance to her of the legal estate, her right to dispose of her absolute interest in the property in fee resulted from her absolute ownership; in other words, the exercise of the right is no longer dependant upon the mere power reserved to her in the deed of settlement. Even if the power itself were not merged in the legal estate, a purchaser from her would now obtain a perfect title under any of the ordinary forms of conveyance; as she could not afterwards defeat her grant by an exercise of the power of appointment. (*See Sugden on Powers, 5th Lond. ed. 61.*)

Again; the object of the deed of settlement in this case was not to deprive the complainant of the control of her property in case of the death of her husband during her life, but merely to preserve the same for her use, and to enable her to dispose of it by will if she should die during her coverture. The whole object of the trust was therefore at an end by the death of her husband; and the object of the trust having ceased to exist, she was entitled in equity to a reconveyance of the legal estate from the trustee. And upon such conveyance the power to appoint the inheritance by will was merged in the legal estate, both at law and in equity.

The complainant is, therefore, entitled to a specific performance of the contract for the sale of the two lots in question, and her deed to the purchaser will give to him a perfect title to the premises.