ERNST W. ALBRECHT, Plaintiff, *v.* STEPHEN PELL,
Defendant.

*Marriage settlement in* 1841 — *power of wife to devise lands under power in.*

By a marriage settlement made in 1841 property was conveyed to a trustee, the
wife being empowered to limit, devise, order or appoint, either by her last will
and testament in writing or by any other writing, the property held in trust
to such persons as she might see fit. The wife died in 1875, leaving a will
executed in 1874. *Held,* that though at the time of the execution of the
settlement the law did not permit the wife to transfer the legal title to the land
by a will, yet, that at the time of her death the law did authorize her so to do,
and that a devise thereof by her to her executors vested the legal title in them.

Controversy submitted without action pursuant to section 372
of the Code.

Ernst W. Albrecht, having contracted for the purchase of a lot
of ground in the city of New York, with Stephen Pell, executor,
refused to take title, on the ground that said Pell could not give
a full and clear title in fee simple of said lot, and demanded of
said Pell to take such steps and measures as would give him (Pell)
such full title in fee simple, when he (Albrecht) would take title,
which, however, said Pell refused to do.

The controversy depended upon the construction to be given to
an ante-nuptial agreement of September 21, 1841, which, after
placing certain real estate of the intended wife in trust for the
payment of the income to her for life, provided, among other
things, as follows: " That if the said intended marriage shall take
effect, that then he, the said John W. Innes, shall and will permit
and suffer the said Mary to give, grant, bargain, sell and dispose of
her said separate estate in her lifetime, and to make such will and
other writings as aforesaid, and thereby to give, order and devise,
limit and appoint the said separate estate to any person or persons,
for any trust, use, intent or purpose whatsoever."

*Nehrbas & Pitshke,* for the plaintiff.

*Edward Fitch,* for the defendant.

DANIELS, J.:

The only point submitted to the court for its decision in this case presents the question whether the executor can convey the title to certain real estate he has contracted to sell to the plaintiff. It is conceded to have been lawfully vested in a trustee, under a marriage settlement made for the benefit of the testatrix in 1841. By the terms of the settlement the property was to be held in trust for her during her marriage; and it was so held until the period of her own decease. The trustee himself has since died, and it is contended, on the part of the plaintiff, that the trust has from that time vested in this court; but that is evidently an erroneous view of the effect of the decease of the beneficiary, for it has been provided by statute, which was in force when the trust was created, that when the purposes of an express trust shall have ceased the estate of the trustee shall also cease. (3 R. S. [5th ed.], 22, § 86.) This provision had the effect of terminating the title of the trustee in the property when the beneficiary died, and there was nothing left to devolve upon the court for execution. It is only when the trust itself remains partially unexecuted, that it becomes vested in this court upon the decease of the trustee (id., § 87), and that, as already stated, is not this case. The parties to the marriage settlement included the trustee, and the persons who contemplated marriage; and in the instrument making the settlement and creating the trust they, in terms, so far qualified the estate of the trustee in the property as to secure the power to the intended wife, at any time during her life, to "limit, devise, order or appoint, either by her last will and testament in writing, or by any other writing signed with her hand, in the presence of two or more credible witnesses," the property held in trust for her benefit; and it was further declared that the person or persons to whom she should "give or dispose any part of her separate estate, by her last will or any other writing that shall be signed by her in the presence of two credible witnesses, as aforesaid, shall, and lawfully may, peaceably and quietly have, hold, occupy, possess and enjoy the same according to the true meaning of such grant, gift, devise or appointment, without any let, denial, hindrance or interruption of, or by, the said John W." (the husband), "his executors, administrators or assigns, or any of them."

The trust was subordinated to the existence of this power in the

beneficiary from the moment of its creation, through the entire period of its duration. And although the law may not have permitted such an effectual execution of it by her as would transfer the legal title to the estate through the operation of her last will, when her marriage took place, that disability was afterwards, and before her will was executed, removed by express statutory enactments. Before that her will was deemed sufficient to devise an equitable estate, under the authority of such a power, which would entitle the devisee, through the intervention of a court of equity, to a conveyance of the legal estate from the heir. (*Bradish* v. *Gibbs*, 3 Johns. Ch., 522.) And as the devisee took the estate under the power, and not exclusively by means of the will, the necessity for such a conveyance to complete the title was not uniformly conceded. (*Strong* v. *Wilkin*, 1 Barb. Ch., 9.) But still it seems to have been the law. (*Wadhams* v. *Am. Home Miss. Society*, 2 Kernan, 415.) But since that time and before the will was executed which is now before the court, that disability had been removed by legislation.

By chapter 375 of the Laws of 1849, married women were empowered to devise their real and personal estate; and afterwards they were expressly authorized to make wills. (Laws of 1867, vol. 2, page 1927, chap. 782, § 4.) The testatrix executed her last codicil in 1874, and died in 1875. Her will and codicils went into effect at that time, and they consequently had the sanction and authority of both these statutory provisions. That was sufficient under the power reserved to her by the marriage articles, to render her devise of the real estate, affected by the trust, effectual, as a conveyance of the legal and equitable title, to her executor. Her power in that respect was in no way restrained by the last section of the act of 1849, declaring that all contracts made between persons contemplating marriage, shall remain in full force after such marriage shall take place. (Laws of 1849, chap. 375, § 3.) It was by reason of the fact that the marriage articles did remain in force, and consequently preserved unimpaired the power created by them, that the testatrix could devise the title to the trust estate. After her preceding disability as a married woman had been removed by the legislature, neither the case of *Anderson* v. *Mather* (44 N. Y., 249) nor that of *Mc Whorter* v. *Agnew* (6 Paige, 111), could in any manner qualify the authority possessed by her under the stat-

utes, which have been referred to and which were in force at the time when her will went into effect. She clearly devised to her executor the title to the property affected by the present controversy. Indeed, that is conceded by the plaintiff's counsel, if she had authority to execute the power reserved to her by the instrumentality of her will. That she had that right has already been shown. The unqualified statutory authority given to married women to make and execute wills, added to that which preceded it, of devising their real estate and bequeathing their personal estate, were ample for that purpose.

The defendant should, therefore, have judgment on the case submitted for the determination of this court.

DAVIS, P. J., and BRADY, J., concurred.

Judgment for defendant on case submitted.